UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

PRITHVI VULUPALA,

    Plaintiff,

v.

WILLIAM P. BARR,
*in his official capacity as
Attorney General
of the United States*, et al.,

    Defendants.

Civil Action No. 19-378 (ABJ)

## MEMORANDUM OPINION

Plaintiff has filed a petition for writ of mandamus asking the Court to order the defendants, U.S. Attorney General William P. Barr, U.S. Secretary of State Michael R. Pompeo, Assistant Secretary for Consular Affairs Carl Risch, Acting Secretary of Homeland Security Chad Wolf,[1] Consul General-U.S. Consulate-Hyderabad, India Katherine Hadda, and Consular Officers John Does # 1–10, to perform their non-discretionary duty to adjudicate his visa application. *See generally* Compl. [Dkt. # 1]. The petition is combined with a complaint that seeks declaratory and injunctive relief under section 706(1) *et seq.*, of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1) *et seq.*; in it, plaintiff asks the Court to declare that since September 2018, defendants have unreasonably delayed final adjudication of his H-1B work visa application, and to compel them to make the awaited determination. Compl. at 19.

---

[1] The Court notes that Chad Wolf has been named Acting Secretary of Homeland Security, and is, therefore, substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

Defendants have filed a motion to dismiss for lack of subject matter jurisdiction, arguing that plaintiff's claims are foreclosed by the doctrine of consular nonreviewability. Defs.' Mot. to Dismiss [Dkt. # 7] ("Defs.' Mot."); Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. #7-1] ("Defs.' Mem."). The motion will be denied because the doctrine applies to *final* decisions made by the agency, and plaintiff's application is still under review.

## BACKGROUND

Plaintiff Prithvi Vulupala, a citizen of India, entered the United States in 2013 on an F-1 visa, which allowed him to complete a master's degree at a university in Texas. Compl. ¶¶ 30, 31. In 2016, after completing additional optional training, plaintiff began working for 9to9 Software Solutions, LLC in the United States as a Technical Lead/SAN Engineer. Compl. ¶ 32.

In August 2018, plaintiff returned to India to visit his family. Compl. ¶ 34. While there, he began the process of applying for an H-1B visa under the Immigration and Nationality Act ("INA"). Compl. ¶ 34. An H-1B visa authorizes American employers to hire foreign workers trained in specialty occupations for a temporary period of time. 8 U.S.C. § 1101(a)(15)(H)(i)(b); 8 C.F.R. § 214.2(h)(1)(ii)(B). As a necessary first step, 9to9 Software submitted an I-129 Petition for Nonimmigrant Worker on plaintiff's behalf on April 13, 2016, and it was approved. Compl. ¶¶ 22, 32; Ex. A to Notice of Pl.'s Position [Dkt. # 13-1].

On September 5, 2018, plaintiff participated in a mandatory visa interview at the U.S. consulate in Hyderabad, India. Compl. ¶ 35. He alleges that at the conclusion of the interview, he was told that "everything looked good." Compl. ¶ 35. On September 19, 2018, plaintiff received an email from the consulate asking him to complete a form containing supplemental questions, which he submitted on September 21, 2018. Compl. ¶ 36. In the interim, on September

20, 2018, plaintiff "received his passport back from the consulate with a section 221(g) visa refusal[2] stating that his application was subject to further administrative processing." Compl. ¶ 38.

Plaintiff filed this action on February 13, 2019, approximately five months after he was interviewed at the consulate. Compl. ¶ 39. He alleges that his visa remains "in administrative processing," despite his repeated contacts with the consulate, his employer's efforts to inquire about his visa status, and inquiries made by two Members of Congress. Compl. ¶¶ 39, 44, 45, 46.

The I-129 petition submitted by plaintiff's employer expired on September 11, 2019, and on January 6, 2020, the Court issued a Minute Order directing the parties to "file separate notices . . . of their respective positions on whether the expiration . . . has any bearing on this matter." Minute Order of Jan. 6, 2020. On January 13, 2020, plaintiff informed the Court that a new I-129 petition had been filed, and he stated in that pleading that he had been re-interviewed by consular officials in Hyderabad twice since the parties completed briefing the motion to dismiss. Notice of Pl.'s Position [Dkt. # 13] ("Pl.'s Notice") at 1. He added that at one of the interviews – on November 26, 2019 – a consular officer requested additional documents, which he promptly provided. Pl.'s Notice at 1. Since that time, plaintiff has not received any additional communications about his application. Pl.'s Notice at 2.

Plaintiff alleges that the delay in adjudicating his visa is unreasonable and, therefore it violates sections 555 and 706 of the APA. Compl. ¶¶ 77–82. While plaintiff is not seeking monetary damages, he asserts that the Court must act because he has suffered and will continue to suffer harm, including the significant disruption of his career, lost income and the financial burden associated with maintaining an empty residence here, and severe emotional distress. Compl.

---

2   *See* section 221(g) of the INA, 8 U.S.C. §1201(g).

¶¶ 54–57. His prayer for relief asks for a writ of mandamus and/or an injunction under the APA requiring defendants to adjudicate his visa within fifteen days, declaratory relief that continued failure to adjudicate his application constitutes unlawful agency action, and attorney's fees and other costs. Compl. at 19–20.

Defendants have moved to dismiss the petition and complaint under Federal Rule of Civil Procedure 12(b)(1) on the grounds that the doctrine of consular nonreviewability "precludes judicial review of a consular officer's refusal of a visa application." Defs.' Mem. at 4. Plaintiff filed an opposition, Pl.'s Opp. to Defs.' Mot. to Dismiss [Dkt. # 10] ("Pl.'s Opp."), defendants replied, Defs.' Reply to Pl.'s Opp. [Dkt. # 12] ("Defs.' Reply"), and the matter is ripe for decision.

## STANDARD OF REVIEW

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S.

64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

### I. The doctrine of consular nonreviewability does not apply to this case.

The Immigration and Nationality Act of 1952, 8 U.S.C. § 1101, *et seq.*, governs the visa adjudication process, and it grants "consular officers exclusive authority to review applications for visas." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156–57 (D.C. Cir. 1999), citing 8 U.S.C. §§ 1104(a), 1201(a).

> In view of the political nature of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions, courts have applied what has become known as the doctrine of consular nonreviewability. The doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise.

*Id*. at 1159. An applicant cannot avoid the impact of this doctrine by artfully casting his complaint in terms of a challenge to the validity of the regulations on which the decision was based or the agency's failure to follow those regulations, *see, e.g., Centeno v. Shultz*, 817 F.2d 1212 (5th Cir. 1987); *Grullon v. Kissinger*, 417 F. Supp. 337 (E.D.N.Y. 1976), *aff'd* 559 F.2d 1203 (2d. Cir. 1977), or merely by invoking the Administrative Procedure Act. *See Saavedra Bruno,* 197 F.3d. at 1160.[3]

---

3    Defendants' citation to *Romero v. Consulate of U.S., Barranquilla* is unavailing as that case concerned plaintiffs who received final visa denials under a different provision of the INA, including one plaintiff who was told that he was "permanently ineligible to receive a tourist visa." 860 F. Supp. 319, 320–21 (E.D. Va. 1994).

Defendants point out that plaintiff has alleged that he received "a section 221(g) visa refusal," Defs.' Mem. at 5, and they recite the legal principle that the doctrine of consular nonreviewability divests the Court of subject matter jurisdiction to review a consular officer's refusal of a visa application. Defs.' Mem. at 4. Defendants submit that since "the relief plaintiff seeks requires this court to adjudicate a consular visa decision made in a foreign country, the doctrine of consular nonreviewability bars plaintiff's claims." Defs.' Mem. at 5.

But the motion to dismiss and the complaint seem to be two ships passing in the night. Plaintiff does not seek to challenge or adjudicate the merits of a "decision to issue or withhold" his application, *see Saavedra Bruno,* 197 F.3d at 1159; he complains that there has been an unreasonable delay in issuing any final decision at all. Compl. ¶¶ 5, 39, 47, 58, 60, 81–82; Pl.'s Opp. at 4. So the question to be determined is whether the agency has already rendered a final decision that would trigger the doctrine. *See P.K. v. Tillerson*, 302 F. Supp. 3d 1, 11 (D.D.C. 2017) ("[T]he doctrine of consular non-reviewability does not apply where the government has not made a final visa decision.").

Section 221(g) of the INA provides:

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law[.]

8 U.S.C. § 1201(g). This language concerning when a visa may not be "issued" does not answer the question. The Department's Foreign Affairs Manual, or FAM, provides that a section 221(g) "Refusal Letter" must include the language: "Please be advised that for U.S. visa purposes . . .

this decision constitutes a denial of a visa." 9 FAM 403.10-3(A)(2)(U)(2)(d). It also "must . . . not state that the denial is 'pending', 'temporary', or 'interim' or that the case is suspended, although it may reference further administrative processing of the case." 9 FAM 403.10-3(A)(2)(U)(2)(b). Defendants suggest that under this guidance, the consulate is faced with a binary choice – "issue" or "refuse" – and they hang their hat on the agency's use of the word "refuse." Defs.' Reply at 3–4. But that elevates form over substance. As other courts have found, the focus should be on what is actually happening; even if the State Department chooses to characterize a section 221(g) notification as a "refusal," an interim decision is not sufficiently final to warrant the application of the doctrine.

In *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry*, the plaintiffs had applied for Iraqi and Afghan Special Immigrant Visas, which are adjudicated using a fourteen-step process, including a step thirteen described as "administrative processing." 168 F. Supp. 3d 268, 275, 284 (D.D.C. 2016). At that stage, the plaintiffs received refusals under section 221(g), which advised that their "administrative processing" was not yet complete. *Id*. at 285. The court decided that because the applications remained in administrative processing, plaintiffs had not yet received final decisions, and "the doctrine of consular nonreviewability d[id] not bar their claims." *Id*. at 292. The district court cited *Patel v. Reno*, in which the court took issue with the Department's characterization of a letter sent to the plaintiff's lawyer citing section 221(g) as a "refusal" since the agency was still holding the matter in abeyance. 134 F.3d 929, 932 (9th Cir. 1997) ("Most importantly, it is not a final decision.").

In *P.K. v. Tillerson*, while the plaintiffs had already been told they were not eligible for diversity visas, the court found that their claims for injunctive and mandamus relief were not barred by the doctrine because "it d[id] not appear their applications h[ad] been finally refused."

7

302 F. Supp. 3d at 11. In reaching its decision, the court relied on the fact that the plaintiffs had been asked to submit supplemental documents. *Id*. at 11–12. It also noted that for one plaintiff, who had been told the Department "would not be able to issue him a visa," the Department acknowledged at a status conference before the court that this statement "did not indicate that he would definitely not receive a visa." *Id*. at 11. For those reasons, the court concluded that the applications had not been finally refused and the doctrine did not apply. *Id*. at 12.

In the absence of any binding Circuit precedent on the issue, the Court finds these decisions to be persuasive, and it will apply similar reasoning here.[4]

Plaintiff has alleged, as the plaintiffs did in *Nine Iraqi Allies* and *P.K.*, that his visa application remains in administrative processing. Compl. ¶ 61. He has continued to supply information to the Department at its request, and was re-interviewed by consular officials on at least two occasions after he received the section 221(g) notice. Pl.'s Notice at 1. When counsel for plaintiff advised counsel for defendants that one of the interviews had taken place, and that the

---

[4] Defendants cite two decisions from other district courts to support their contention that this Court lacks subject matter jurisdiction to review a Section 221(g) refusal. *See* Defs.' Reply at 4. However, neither of these cases persuades the Court.

    First, although the court in *Elhabash v. Department of State* credited an embassy's comment that the plaintiff's application "was refused under Section 221(g)," it also noted that in a later response to an inquiry from the plaintiff about why his application was denied, the embassy wrote back: "[k]indly note that your case is not refused it is undergoing administrative processing which may take as much as 90 days or more," and that his application "was temporarily refused until we receive the approval on your case from Washington." 2010 U.S. Dist. Lexis 41580, at *4, 9 (D.N.J. Apr. 27, 2010). That language supports this Court's conclusion that a section 221(g) refusal is an interim decision.

    Second, *Saleh v. United States* concerned a different type of visa application which was approved but placed in administrative processing. 293 F. Supp. 3d 419, 422 (S.D.N.Y. 2018). The court there commented that the proper procedure "appears to" be to deny the application before placing it in administrative processing, as opposed to what occurred in that matter. *Id*. at 432. It also noted that "a visa that is in 'administrative processing' cannot be said to have received final approval." *Id*. at 431. The court's cursory impression of the "apparent" proper process does not weigh heavily on this Court. In any case, neither case is binding on this Court.

updated I-129 form had been approved, the Assistant United States Attorney looked into the matter and replied: "I understand your client is supposed to reappear tomorrow. Thereafter, a decision would be made as expeditiously as possible." Ex. C to Pl.'s Notice. [Dkt. # 13-3].

These events are inconsistent with the government's legal position that a "final" decision has already been made. Therefore, the Court finds that the doctrine of consular nonreviewability, which precludes review of a *final* decision by a consular official, does not apply and so, it does not divest the Court of subject matter jurisdiction over this case.

**II.     The doctrine of consular nonreviewability does not preclude the Court's review of plaintiff's APA claim**.

Plaintiff alleges in Count Two that "[p]ursuant to the APA . . . [d]efendants have a nondiscretionary duty to act 'within a reasonable time' upon a matter presented to it," Compl. ¶ 77, quoting 5 U.S.C. § 555(b), and that defendants "have failed to carry out the adjudicative and administrative functions delegated to them by law," specifically their duty to "process nonimmigrant visas properly and promptly." Compl. ¶ 81, citing 22 C.F.R. § 41.106.

The APA grants courts the authority to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706, when the action sought to be compelled is a clear, nondiscretionary duty. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004); *accord Kaufman v. Mukasey*, 524 F.3d 1334, 1338 (D.C. Cir. 2008). But the APA's provisions do not apply in cases where "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), and defendants argue that the doctrine of consular nonreviewability, which predates the APA, "renders the APA inapplicable." Defs.' Mem. at 7.

This argument fails for reasons similar to those set forth above: while the doctrine of consular nonreviewability precludes review of final visa application *decisions*, it does not insulate a delay in reaching those decisions from judicial review.

9

The Supreme Court has held that under the APA, where "an agency failed to take a discrete agency action that it is required to take . . . the court can compel the agency to act [although it] has no power to specify what th[at] action must be." *Norton*, 542 U.S. at 63, 65; *accord Kaufman*, 524 F.3d at 1338. Granting or refusing a final visa application is a mandatory agency action. Regulations require that a consular officer "must . . . properly and promptly" process a visa application, 22 C.F.R. § 41.106, and either "issue" or "refuse" a completed visa application. *Id*. § 41.121(a). Therefore, an alleged failure to complete those steps within a reasonable period of time is reviewable under the APA.

Courts in this district and elsewhere have applied this general principle in the specific context of visa adjudication. *See*, *e.g.*, *Afghan and Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Pompeo*, 2019 WL 367841, at *11 (D.D.C. Jan. 30, 2019) (denying a motion to dismiss claims brought under the Declaratory Judgment Act, the APA, and the Mandamus Act that alleged that the time the defendant was tasking to adjudicate plaintiffs' visa applications was unreasonable); *Khanom v. Kerry*, 37 F. Supp. 3d 567, 577 n.10 (E.D.N.Y. 2015) ("To the extent that a plaintiff seeks an order compelling a Consul General to *expedite* their immigrant visa application or otherwise act on the application . . . the failure to take any action on a visa petition falls outside the doctrine of consular non-reviewability[.]") (emphasis in original). In *American Academy of Religion v. Chertoff*, 463 F. Supp. 2d 400, 422–23 (S.D.N.Y. 2006), the court similarly found that it had the authority under section 555(b) to determine if a final decision on a plaintiff's visa application had been unreasonably delayed. In so holding, it rejected the government's argument that the court lacked jurisdiction because "visa issuance is completely discretionary," observing that the government was "confusing its discretion over how it resolves

the applications . . . with its discretion over whether it resolves them." *Id.* at 421, quoting *Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999).

The Court agrees with the reasoning in these decisions and finds that its consideration of plaintiff's unreasonable delay claim is not barred by section 701 of the APA or the doctrine of consular nonreviewability.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied. A separate order will issue.

_/s/ Amy B. Jackson_
AMY BERMAN JACKSON
United States District Judge

DATE: February 7, 2020